RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE  9 / 26 / 11
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SAM LIPRIE | : | DOCKET NO. 2:09-1607 |
| VS. | : | JUDGE TRIMBLE |
| STATE FARM FIRE & CASUALTY CO. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is "State Farm Fire & Casualty Company's Motion for Summary Judgment" (R. #12) wherein the mover seeks summary judgment in its favor in finding that as a matter of law, plaintiff is owed no money under the homeowner's policy of insurance, and that no penalties or attorney's fees are owed because State Farm acted promptly, in good faith and with probable cause. Also before the court is a "Motion to Strike the Affidavit of Charles Norman" (R. #32) and a "Motion to Exclude or Limit Estimate and Testimony of Norman" (R. #34)  wherein State Farm seeks to strike the Norman affidavit from the summary judgment record and/or to exclude Mr. Norman's testimony because it is allegedly unreliable and inadmissible.

## FACTUAL STATEMENT

Plaintiff owns property in Big Lake, Louisiana; the property is insured by State Farm. Plaintiff's property is also insured under a federal flood policy, the obligations of which are not at issue in this suit.  On September 13, 2008, Hurricane Ike made landfall on the Texas coast.  On September 19, 2008, plaintiff's insurance agent contacted State Farm and reported cracks in the ceiling, damage to the roof and various other damage.

State Farm inspected the property on October 11, 2008 at which time the adjuster discovered wind damage which caused missing ridge caps and shingles, and siding damage on the rear and front of the house.  Because the damage found by the adjuster did not exceed plaintiff's deductible, plaintiff was paid only for additional living expenses incurred as a result of the storm, and not for the wind damage to his residence.

In April 2009, State Farm received a call from plaintiff's agent's office requesting a copy of the estimate prepared by State Farm's adjuster.  On August 24, 2009, State Farm received a copy of a report by Charles Norman dated July 20, 2009 related to damages to plaintiff's residence caused as a result of Hurricane Ike.  The Norman report included an estimate prepared by Cal Chambers with repairs totaling more than $120,000.

On September 15, 2009, State Farm's adjuster, Mr. Norman, and plaintiff's estimator, Cal Chambers met at the property for another inspection.  State Farm's adjuster determined that none of the items plaintiff claimed as damages were the result of an "accidental direct physical loss" as required by the insurance policy, and furthermore, there was no evidence presented at the inspection to support any payment due by State Farm.  After the inspection, State Farm adjusted its estimate to account for one additional item of damage to a window that was not previously accounted for, however, no payment was due because the total damage estimated was still below plaintiff's hurricane deductible.

State Farm requested additional "before" photographs and copies of all invoices in an effort to reconcile any payment that might have been due.  State Farm contacted plaintiff's engineer, Charles Norman, on October 3, 2009, and requested photographs documenting the damages.  Mr. Norman advised State Farm that he had before and after photographs of the home, but could not

release them because Mr. Liprie had hired an attorney.

## MOTION TO STRIKE AFFIDAVIT

State Farm maintains that Mr. Norman's opinion is not reliable because it lacks the support of the opinions contained in the July 2009 report.  State Farm suggests that at the time of the May 19, 2009 inspection with Cal Chambers, all of the repairs to the property had been completed.  State Farm argues that Mr. Norman's July 2009 Report does not suggest or opine as to the need for re-leveling the floor under the master bedroom and the work performed by Keiland Construction which is the central focus of this litigation. State Farm asserts that Mr. Norman first opined as to the need for re-leveling in his July 2011 affidavit, some two years after the initial report.   State Farm complains that Mr. Norman's inspection of the home was after repairs had been completed.

Plaintiff submits that the first inspection by Mr. Norman was on October 14, 2008, one month after Hurricane Ike made landfall.[1]   Plaintiff further directs the court to State Farm's engineering expert, Trident Engineering Associates, Inc. ("Trident") which notes that Mr. Norman "visit[ed] site to assess damages" on October 14, 2008 and May 19, 2009.[2]  Plaintiff then asserts that the Report of Trident further indicates that the first inspection was prior to the repairs being completed in December of 2008.  Plaintiff submits another affidavit of Charles Norman wherein he declares that he personally observed during his first inspection and subsequent inspections, unrepaired wind damages.[3]  Thus, plaintiff argues that State Farm's assertion that Mr. Norman's opinions should be excluded because he did not inspect the home prior to repairs being made is

---

[1]  See Plaintiff's exhibit 1, p. 1, Norman Report.

[2]  Plaintiff's exhibit 3, p. 5 of the Report of Trident Engineering Associates, Inc.

[3]  Plaintiff's exhibit 2, affidavit of Charles Norman.

3

completely frivolous.

As to State Farm's argument that Mr. Norman's opinions about the structural damage and repairs are "new" opinions, plaintiff refers the court to page 2 of Mr. Norman's July 20, 2009 report, wherein the report specifically includes as part of its itemization of "Wind Damages" the following opinions:

> The attic frame and main wood frame resistant system including the connections between the columns and floor beams have been weakened and the alignment of the home has been altered.  This has resulted in some separation of the wood frame members and also cosmetic damages to the interior sheetrock.  There has been some structural repair to the floor under the master bedroom area.  This is storm related.[4]

Finally, plaintiff takes issue with State Farm's allegation that Mr. Norman's opinions are based solely upon the deposition testimony of Keith DuRousseau rather than Mr. Norman's personal knowledge.  Plaintiff notes that Mr. Norman's Report was issued on July 20, 2009, while Mr. DuRousseau's deposition was taken two years later on June 15, 2011.  Thus, Mr. Norman's July 2009 report could not be based on Mr. DuRousseau's deposition.  In other words, Mr. Norman provided his report and opinion two years before Mr. DuRousseau's deposition.  Plaintiff further buttresses his point by Mr. Norman's affidavit which declares that he did not rely on Mr. DuRousseau's deposition, he never spoke with Mr. DuRousseau prior to his deposition, his involvement with Mr. DuRousseau was limited, and his opinions were reached independently of Mr. DuRousseau's deposition.[5]

The court finds no merit to State Farms arguments that  Mr. Norman's testimony and/or

---

[4]  Plaintiff's exhibit 1, p. 2 of the Report of Norman dated July 20, 2009.

[5] Plaintiff's exhibit 2, Affidavit of Norman.

4

affidavit should be excluded because the inspection was performed after the repairs were completed, or that Mr. Norman's alleged "new" opinion was unreliable or untimely.  Accordingly, the court will deny the motion to strike that affidavit and the motion to exclude Mr. Norman's testimony.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[7]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[8] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[9]  Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[10]  The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material

---

[6]  Fed. R.Civ. P. 56(c).

[7]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[8]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[9]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[10]  Anderson, 477 U.S.  at 249.

fact or law.[11]  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[12] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[13]

## LAW AND ANALYSIS

*Was State Farm in bad faith and liable to plaintiff for penalties and attorney's fees?*

Plaintiff seeks penalties and attorney's fees pursuant Louisiana Revised Statutes 22:1892 and 22:1973.  Plaintiff alleges that there are substantial facts to support a finding that State Farm was arbitrary and capricious with respect to its failure to pay plaintiff's claims within the statutory deadlines.  Plaintiffs asserts that it submitted an invoice for $20,803.83 to repair damage to the sheetrock on the second floor, yet State Farm has paid nothing.  Plaintiff submitted a second invoice for $31,750.00 for repair and re-leveling of the support beam damage between the first and second floors, yet State Farm has paid nothing.

State Farm maintains that even if the court finds that it owed additional money to plaintiff for, it did not act arbitrarily, capriciously, or without probable cause in failing to pay plaintiff a disputed amount.  State Farm first remarks that its estimates were below plaintiff's hurricane deductible, thus no money was owed.  State Farm argues that it acted reasonably in refusing to pay the Chambers estimate which was written without an inspection of the property.  Within days of receiving that estimate, State Farm re-inspected the property and allegedly found nothing that

---

[11]  Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[12]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[13]  Anderson, 477 U.S. at 249-50.

triggered an obligation to pay.  State Farm maintains that there was no proof of any additional covered loss.  State Farm asserts that it promptly examined each item of damage alleged by plaintiff and determined  that they were caused by something other than wind.

State Farm claims it did not receive notice of plaintiff's additional damage claim until August 2009 when it received a report from plaintiff's engineering expert, Charles Norman which alleged damages totaling more than $120,000.  After receipt of this report, and within two days, State Farm contacted plaintiff for more information and to set up a second inspection.  State Farm complains that most of the repairs to the home had been completed when it performed the re-inspection.

At the second inspection, the State Farm adjuster was unable to attribute the items contained in Mr. Chambers' estimate to wind damage caused by Hurricane Ike.  State Farm remarks that Mr. Chambers admitted to the adjuster that his estimate was based on Mr. Norman's report, and that he had not personally visited or inspected the property prior to preparing his estimate.

One who claims entitlement to penalties and attorney's fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause.[14]  Satisfactory proof of loss is that which is sufficient to fully apprise the insurance carrier of the claim and the extent of damages.[15]  The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious."[16]

State Farm contends that it did not act arbitrarily and capriciously in not paying the disputed

---

[14] Reed v. State Farm Mut. Auto. Ins. Co., 857 So.2d 1012, (La.10/21/03), citing Calogero v. Safeway Ins. Co. of La., 753 So.2d 170 (La.1/19/00).

[15] Yount v. Lafayette Ins.Co., 4 So.2d 162, 172 (La.App. 4 Cir. 2009).

[16] Louisiana Maintenance Svcs., Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d (La.1993); Lewis v. State Farm Ins. Co., 946 So.2d 708 (La.App.2d Cir. 12/27/06).

amounts given the fact that it knew that the Chambers' estimate was written without an inspection of the property, and further, considering that within days of receiving the Chambers' estimate, State Farm reinspected the property and found nothing triggering an obligation to pay.  Thus, State Farm maintains that it has a reasonable basis for denying payment to plaintiff for the additional amounts.

State Farm cites <u>Kodrin v. State Farm Fire & Casualty Co.</u>,[17] which held that '[a]n insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss."  In reversing the jury's award of penalties, the Fifth Circuit held that State Farm's refusal to pay was with reason, and that finding bad faith any time an insurer denies coverage and a jury disagrees, "would unduly pressure insurers to pay out claims that they have reason to believe lie outside the scope of coverage, solely to avoid penalties later.  Such a rule would pervert the presumption that insurers act in good faith unless the insured proves bad faith, and this is foreclosed by Louisiana law."[18]

The court has reviewed the arguments and the evidence submitted by the parties and finds that State Farm did not act in bad faith in not paying plaintiff's invoices due to its concern that the additional damages were submitted almost a year after the hurricane, the repairs had already been performed when the invoices or damage claim was made, and the fact that plaintiff's expert report was written without inspection of the property.  However, we make this determination without considering whether plaintiff's damages are covered under the State Farm policy of insurance.

*Did State Farm fully compensate plaintiff pursuant to his homeowner's policy?*

State Farm maintains that plaintiff has failed to show that there is any "accidental direct

---

[17]  2009 WL 614521, No. 08-30092 (5th Cir. 3/11/09).

[18]  <u>Kodrin v. State Farm Fire & Cas. Co.</u>, 314 Fed.Appx. 671, 680 (5th Cir. 2009).

physical loss" to his residence caused by "windstorm or hail."[19]  State Farm remarks that in August 2009, approximately one year from the date Hurricane Ike hit, it received Charles Norman's report which included an estimate by Mr. Chambers totaling more than $120,000 in damages.  State Farm immediately contacted plaintiff and scheduled an appointment for a re-inspection.  State Farm was also informed that most of the repairs had been completed.  State Farm conducted another inspection with Mr. Norman, the engineering expert, and Mr. Chambers, a public adjuster, who prepared plaintiff's estimate of damages.  State Farm asserts that Mr. Chambers admitted to the State Farm adjuster, that he had not personally visited or inspected the property prior to preparing his estimate and that his estimate was based solely on information contained in the Norman report.

Plaintiff submits the following summary judgment evidence to create a genuine issue of material fact for trial: (1) deposition of Sam Lipre, (2) Affidavit of Charles Norman, (3) deposition of Keith DuRousseau, and (4) Affidavit of David Hanchey.  Plaintiff and Charles Norman declare that after Hurricane Rita, but before Hurricane Ike, plaintiff's home had been completely renovated.  Thus, any damage had to be the result of Hurricane Ike.  Plaintiff has submitted invoices to State Farm in the amount of $20,803.83 for repair for extensive cracking in the sheetrock on the second floor and repainting of the sheetrock after the repairs,[20] and another in the amount of $31,750.00 for the re-leveling and repair of support beams between the first and second floor of Mr. Liprie's home.[21]

Plaintiff notes that there is no dispute that the damage to the first floor was caused by flood,

---

[19]  State Farm exhibit A, p. 7, § I (Losses Insured).

[20]  Plaintiff's exhibit 4, affidavit of Hanchey.

[21]  Plaintiff's exhibits 3 and 4, affidavit of Hanchey, deposition of Keith DuRousseau, pp. 21-23 and exhibit 2 to DuRousseau's deposition.

and not covered by the State Farm policy.  Plaintiff submits the affidavit of his attorney who declares that two invoices totaling $20,803.83 and $31,750.00 were produced to State Farm in response to State Farm's request for production of documents. [22]  Plaintiff further submits the depositions of Keith DuRousseau who testified that these damages were caused by wind.[23]  Plaintiff submits an affidavit of Charles Norman which declares that plaintiff's damages were caused by wind.[24]  The Norman affidavit further identifies numerous other items of wind damage caused by Hurricane Ike.[25]  Plaintiff remarks that State Farm had received the Norman report nearly two years earlier.

The court finds that plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether or not the additional damage claims can be attributable to wind from Hurricane Ike.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted in part and denied in part.  The motion will be granted to the extent that plaintiff's claim for penalties and attorneys fees will be granted; otherwise, the motion will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 2 6 th day of September, 2011.

---

[22]  Plaintiff's exhibit 4, ¶ 2. The invoices were for repairs in the sheetrock on the second floor and re-leveling and repair of support beams between the first and second floor.

[23]  Plaintiff's exhibit 3, DuRousseau depo., pp. 6-7, 11-15, 16-17, and 19.

[24]  Plaintiff's exhibit 2, Norman affidavit.

[25]  Id.

10

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE